HENDERSON vs. STONE.

APPEAL from the court of the sixth district.

PORTER, J. delivered the opinion of the court. This action was commenced on a written contract, by which the parties to this suit agreed to run with certain horses " a fair and honorable race," on a day fixed, for the sum of $1000. It was also stipulated, that in

*West'n District Sept. 1823.*

SIBLEY
*vs.*
SLOCUM.

Accidental or overpowering force does uot excuse the performance of an aleatory contract.

case either failed to comply with his agree-ment, he should pay to the other five hundred dollars.

The defendant denied the contract, and pleaded that it was bilateral, and not executed in duplicata. And further, that he was pre-vented from running the race by accidents over which he had no control, and which no pru-dence or foresight could have prevented.—Namely, by his horse running away and kil-ling himself, in training.

The article of agreement entered into be-tween the parties, and read in evidence, pur-ports, that the plaintiff and defendant entered into a contract, to run a race, such as is set forth in the petition.

The plaintiff offered a witness to prove, that in the negotiation which preceded this agree-ment, it was proposed to the defendant, the contract should be so made, that if either of the horses should be prevented from running on the day appointed by death, neither the sum bet, nor the forfeit, should be due to the own-er of the other horse : and that a written con-tract to that effect was drawn up and present-ed to the defendant, which he refused to sign. The judge refused to receive this testimony, and the plaintiff excepted.

West'n District
*Sept.* 1823.

HENDERSON
*vs.*
STONE.

We think the judge did not err. If the testimony offered either added to the written agreement, or diminished it, the court could not legally receive it; for it would have been contradicting by parol, what the parties had reduced to writing. If it neither increased or diminished the stipulations, it was useless. It was not admissible to explain the instrument; for it was clear and plain, and required no explanation.

Taking then the written contract, as the best evidence of what the parties covenanted to do, we proceed to examine its legal effect. The counsel for the defendant has referred to authorities, for the purpose of shewing, that where a person, who has entered into an obligation to do a particular thing, is prevented by accident, or overpowering force, there is no ground for claiming damages for the non-performance; and that the nullity of the principal obligation, always carries with it that of the penalty. *Pothier, traité des obligations, nos.* 149, 338, & 339. Of the correctness of this doctrine, in ordinary cases, there cannot be a doubt; but we think it does not apply here. The contract, on which the action was commenced, is an aleatory one; and it is of the essence of such a contract,

West'nDistrict
*Sept.* 1823.

HENDEESON
*ve.*
STONE.

that there should be risque incurred on one side or the other. The defendant, when he entered into an engagement to run his horse by a particular day, or pay five hundred dollars, took all risks; as well those which preceded the race, as those which might have occurred at the moment of running. If the horse had become lame, or sick, so as to have been unable to start, or if started, unable from these causes to run with his accustomed velocity, there cannot be a question that in the first hypothesis, the forfeit would be incurred, and in the second, that the race would be lost: though in both instances there was accident, or the occurrence of an event which could not be controlled. We are unable to distinguish between those cases and that now before us; between partial and entire disability; between the horse falling down and killing himself after he starts, or before. In both these cases the relative speed of the horses, which was the principal object of the contract, could not be ascertained, and yet in the former it is admitted the race would be lost. It is our opinion all risks were included by the agreement; and this construction, it is believed, meets the intention of the parties, who, it is probable, intended the penal-

HENDERSON
*vs.*
STONE.

ty, as a compensation for the trouble and expense in preparing their horses. There is a case in the English books, where two young men made a bet depending on the lives of their respective fathers. It turned out one of them was dead when the wager was made. This circumstance would certainly have avoided an ordinary contract. Yet the agreement was enforced. This case certainly presents new ground, to which we are not familiar, and on which we tread with diffidence, but the result of our best judgment in the matter, is, that the plaintiff should recover.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.

*Johnston* and *Wilson* for the plaintiff, *Thomas* for the defendant.

